**SECRETARY OF LABOR, U.S. DEPARTMENT OF LABOR, Plaintiff–Appellant,**

v.

**BURGER KING CORPORATION, Defendant–Appellee.**

No. 90–6078.

United States Court of Appeals, Eleventh Circuit.

March 9, 1992.

---

William J. Stone, U.S. Dept. of Labor, Clair Brady White, Washington, D.C., for plaintiff-appellant.

Sheila M. Cesarano, Miami, Fla., Charles R. Fawsett, Orlando, Fla., Karen H. Curtis, Miami, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and SMITH*, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Plaintiff–Appellant Secretary of Labor, United States Department of Labor ("Secretary" or "DOL") appeals from a district court order dismissing as moot her suit seeking a permanent injunction restraining Defendant–Appellee Burger King Corporation ("Burger King" or "BKC") from violating the Child Labor provisions of the Fair Labor Standards Act (FLSA), 29 CFR § 570.34 *et seq.*, also referred to as Child Labor Regulation No. 3. For the reasons discussed below, we hold that the district court erred in dismissing the suit as moot and remand the case to the district court for resolution of Appellant's unresolved discovery motions and proceedings on the merits.

## I. FACTS AND PROCEDURAL HISTORY

The Department of Labor filed suit against Burger King on March 7, 1990, seeking a permanent injunction restraining Burger King from any future violations of Child Labor Regulation No. 3, which sets out time and occupation restrictions on the work performed by minors under the age of sixteen. In its Answer, BKC denied any past violations of the law and also asserted that even if proved, the alleged violations would not be of sufficient magnitude and severity to justify injunctive relief.

On August 20, 1990, DOL filed a Motion to Compel Discovery, which BKC opposed. The parties filed a joint motion for continuance of the trial and extension of time for completion of discovery until December 1, 1990. The district court denied this motion.

At the September 5, 1990 calendar call, BKC announced that it had formulated a policy effective September 12, 1990 to discharge all employees under age sixteen and forbidding their hire in the future.[1] The district court asked the parties whether BKC's new policy would make settlement possible. Counsel for DOL responded that he would consider the offer, but that settlement was doubtful considering that BKC

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. This proposed policy goes further than the DOL regulations, which permit the hiring of 14- and 15-year olds but sets various restrictions on the type and amount of work the minors may perform. DOL has stated that it would not be in favor of a ban on hiring of minors under age 16, and that it encourages the hiring of 14- and 15-year olds within the regulations adopted by the Secretary.

had not yet complied with several requests for document production and that despite BKC's assurances in the past that it would comply with the law, it had been unable to eliminate violations.

The court scheduled a hearing for September 12, 1990, announced that it would rule on the pending motions at that time, and advised the parties to continue discussing settlement.

On September 11, 1990, the Secretary filed a Second Motion to Compel Discovery for access to computerized records of weekly work hours, rather than the time-cards offered by BKC, and requested an order to compel production of the internal audits conducted by BKC management and referred to in deposition testimony.

At the September 12, 1990 hearing, counsel for BKC reiterated its new policy not to hire fourteen- and fifteen-year olds, stated that the company would be willing to prove its compliance at any time, and suggested that BKC's action rendered DOL's lawsuit moot. Counsel for DOL responded that the new policy would not obviate the need for a prospective injunction to ensure compliance with the law. The court did not rule on the Secretary's motions to compel discovery; instead it gave the parties one week to brief the issue of whether or not BKC's policy deprived the court of jurisdiction.

Counsel for DOL asked whether the Secretary could "make a factual showing in the brief in the nature of summary judgment" and the court agreed. DOL filed a Memorandum in Support of Summary Judgment and submitted excerpts from ten depositions of DOL officials, including several of the compliance officers who investigated various BKC restaurants throughout the country; nine excerpts of depositions of high-level management personnel at the company; six affidavits of children under the age of sixteen who were hired by Burger King; several memoranda concerning company policy on avoiding child labor violations; and computer printouts from various market regions of the Burger King network showing ages and dates of hire of Burger King employees.

Burger King's Memorandum in Support of its Motion for Summary Judgment reiterated its position that the new policy that forbade the hiring of fourteen- and fifteen-year olds obviated the need for a prospective injunction. BKC attached affidavits of its senior vice president/general counsel, and senior vice president for human relations; computerized daily records from the two-week period of September 12, 1990 through September 24, 1990, each of which stated: "# of 14/15 year olds: 0"; and excerpts from depositions of four DOL compliance officers. Burger King also filed its opposition to the Secretary's Second Motion to Compel Discovery of BKC's internal audits.

On October 29, 1990, the district court issued an "Order on Cross-Motion for Summary Judgment." This order did not actually address the issue of summary judgment, but instead dismissed the suit as moot. The court held that review of the record "demonstrates that the Plaintiff cannot substantiate (1) violations of sufficient magnitude and seriousness; (2) [that] BKC's compliance measures and promise of future compliance are not dependable; and (3) that future violations are likely. The latter point is undoubtedly the most important." *Dole v. Burger King Corp.* (90–0628–Civ–Scott, S.D.Fla.), Oct. 29, 1990 [hereinafter "Order"], at 1. The court "determine[d] that the issues are moot and there is no basis for a prospective permanent injunction" and thus dismissed the case "without prejudice for the Department of Labor to return to court if BKC perpetrates any future violations." Order at 1–2 & n. 2.

## II. ANALYSIS

The only issue before this court is whether the district court erred in dismissing the Secretary's lawsuit as moot based on the actions taken by Burger King at the September 5, 1990 calendar call and the September 12, 1990 hearing. Although the district court requested briefs on the issue of whether or not summary judgment was proper and issued an "Order on Cross-Motion for Summary Judgment," the court did

not rule on the merits of the cross-motions and stated specifically that the case was being dismissed as moot. Thus, the question of whether or not a permanent injunction should be issued against BKC is not before this court. Furthermore, it was not proper for the district court to consider a motion for summary judgment while the Secretary's two discovery motions were pending. *See* Fed.R.Civ.P. 56(f). Therefore, we review only the issue of mootness, which is a question of law subject to plenary review by this court. *See Taffet v. Southern Co.*, 930 F.2d 847, 851 (11th Cir. 1991).

It long has been the rule that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (citations omitted). As this court noted in *Greenwood Utilities Com'n v. Hodel*, 764 F.2d 1459, 1462 (11th Cir.1985):

> such abandonment is an important factor on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

(citation omitted). Because of the possibility that the defendant could merely return to his old ways, "[t]he test for mootness in cases such as this is a stringent one.... A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Greenwood Utilities*, 764 F.2d at 1462–63, quoting *City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 289 & n. 10, 102 S.Ct. 1070, 1074 & n. 10, 71 L.Ed.2d 152 (1982). As the Supreme Court has noted, "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952), *quoted in United States v. W.T. Grant, supra*, 345 U.S. at 632, 73 S.Ct. at 897.

Burger King has not met its heavy burden of showing that the illegal behavior cannot reasonably be expected to reoccur. Appellee has asserted that a new policy terminating all fourteen- and fifteen-year old employees and forbidding the hiring of minors under sixteen dissolves the controversy between the parties. Considering the five-year history of violations, however, such a promise, which comes on the eve of trial, cannot be considered the clear proof of abandonment of illegal activity necessary to render DOL's lawsuit moot.

The Department of Labor filed this suit after five years of investigations of restaurants owned and operated by Burger King. These investigations uncovered 1,242 minors illegally employed and 1,561 separate instances of violations of Child Labor Regulation No. 3.[2] This is not a case involving

---

2. Burger King has paid civil monetary penalties assessed by DOL in connection with the following violations of Child Labor Regulation No. 3:
   1. a 1985 investigation in Minneapolis, MN found violations resulting in penalties of $5,800;
   2. a 1986 investigation in Charlotte, NC resulted in penalties of $1,400;
   3. a 1987 investigation in Baltimore, MD resulted in penalties of $400;
   4. a 1987 investigation in St. Paul, MN resulted in penalties of $7,500;
   5. a 1987 investigation in Grand Rapids, MI resulted in penalties of $165,000;
   6. a 1987 investigation in Springfield, IL resulted in penalties of $100;
   7. a 1988 investigation in Belvedere, IL resulted in penalties of $300;
   8. a 1989 investigation in East Meadow, NY resulted in penalties of $4000.
The following violations have been alleged by DOL but have not yet been resolved:
   1. a 1988 investigation of four corporate restaurants in Miami, FL, at which DOL alleges BKC employed a total of 45 minors under the age of 16 in violation of the regulations;
   2. a 1989 investigation of 21 corporate restaurants in and around Chicago, IL, at which DOL alleges BKC employed 227 minors under the age of 16 in violation of the regulations;
   3. a 1989 investigation of 14 corporate restaurants in Michigan, at which DOL alleges BKC employed five minors under the age of

merely a single violation by BKC that readily could be corrected, or an illegal policy adopted by BKC that could be rescinded once and for all. In fact, DOL has not alleged that BKC demonstrated bad faith in its efforts to cure violations of the regulations; rather, DOL has produced evidence that notwithstanding directives from high-level management executives, violations of Child Labor Regulation No. 3 have continued to occur throughout the country and BKC has been unable to ensure compliance.

Burger King has produced nothing more than a bare assertion that *this time* it will enforce a management directive not to hire fourteen- and fifteen-year olds. The September 12, 1990 policy is only one of many instances in which BKC has promised compliance. Records provided by DOL show that individual restaurants have ignored management directives in the past.[3] Deponents have stated that although corporate management has advised them not to hire fourteen- and fifteen-year olds at all, restaurant managers have done so when faced with a severe labor shortage. These pressures are beyond the control of BKC management and there is no reason to believe that BKC will be any more successful now than it has been in the past.

Cases cited by Burger King and relied on by the trial court are inapposite. In *Tobin v. Flippo*, 91 F.Supp. 302 (E.D.Va.1950), a case that is not controlling on this court, an inspection by the Department of Labor revealed that employees of the company were assisted by minors in violation of the FLSA. These minors were not employed directly by the company, however, and, more important, the practice of allowing

the illegal work was discontinued promptly after the investigation and *before* the lawsuit was instituted. The *Tobin* court distinguished its case from *Lenroot v. Kemp*, 153 F.2d 153 (5th Cir.1946). In *Kemp*, an injunction had been granted because, as here, inspectors continued to find violations even after repeated assurances that the defendants would comply with the law. In *Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir.1988), the court declared moot a challenge to a hospital regulation that had not been enforced since 1983, and which the defendant had publicly declared non-enforceable.

The situation in *Cotterall v. Paul*, 755 F.2d 777 (11th Cir.1985), also is completely different from the one at hand. In *Cotterall*, the court found a prisoner's claim for injunctive relief to be moot because he was no longer being held in the jail where the conditions were being challenged. In that case, the court held that the threatened injury was too speculative because "[t]he most that can be said is that if Cotterall is again incarcerated in a minimum security facility and again charged with a disciplinary infraction, he might again be transferred to Coffee County jail." *Id.* at 780. Likewise, in *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), a prisoner's suit for an injunction barring his transfer to a maximum security institution was declared moot when he was returned to the minimum security facility, was not adversely affected following the challenged transfer, and was due for parole in less than a week. In *Cotterall, Ragsdale*, and *Preiser*, the defendants had taken concrete and reliable steps to assure the court that there was no live and justiciable dispute

15 at four of these restaurants in violation of the regulations;

4. a 1989 investigation of 12 corporate restaurants in Massachusetts, at which DOL alleges BKC employed 334 minors under the age of 16 in violation of the regulations;

5. a 1990 investigation of 21 corporate restaurants in Burlingame, CA, at which DOL alleges BKC employed six minors under the age of 16 in violation of the regulations.

3. The most recent example of this is a March 12, 1990 memo to San Francisco Market Company Restaurant managers that reads in part:

[T]he Federal Department of Labor has commenced a suit against BKC for violation of the Child Labor Law. It is incumbent upon us to ensure that no violations are discovered in San Francisco.... There are 8 of you who have been complying with the law as it currently exists and I thank you. I also apologize for the harsher procedures, but with 16 Managers not adhering to the law, these procedures are necessary.

between the parties; the same cannot be said for Burger King.

### III. CONCLUSION

To demonstrate mootness, the defendant has the heavy burden of showing that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *City of Mesquite*, 455 U.S. at 289 n. 10, 102 S.Ct. at 1074 n. 10 (citations omitted). For the reasons discussed above, Burger King has failed to meet this standard and the decision of the district court dismissing the case was in error. We REVERSE the dismissal and REMAND to the trial court for proceedings on the merits. On remand, the trial court should resolve Appellant's outstanding discovery motions and determine whether a permanent injunction against Burger King forbidding future violations of Child Labor Regulation No. 3 should issue.

REVERSED and REMANDED.